STATE EX REL. MINNEHAHA LIQUOR STORE, INC. v. DAVID R. ARUNDEL.[1]

June 18, 1937.

No. 31,223.

[1]Reported in 273 N. W. 817.

*William S. Ervin,* Attorney General, and *Roy C. Frank,* Assistant Attorney General, for appellant (respondent below).

*Adolph Anderson* and *Louis B. Schwartz,* for respondent (relator below).

GALLAGHER, CHIEF JUSTICE.

This is an appeal from a judgment of the district court of Hennepin county granting a writ of *mandamus* directing appellant as liquor control commissioner of the state of Minnesota to approve a liquor license for the year 1936 after the same had been granted to respondent by the city council of the city of Minneapolis.

At the time the controversy arose respondent was and for some time prior thereto had been operating a liquor store at 2630 East Lake street in the city of Minneapolis under an assignment of a license previously granted by the city council to one Harold K. Riddle and approved by appellant. The assignment of the license was also with the approval of the city council and of appellant, but this license was for the year 1935 and has no particular bearing upon the issues.

These issues are: (1) May the liquor control commissioner of the state of Minnesota exercise discretion in approving or refusing to approve an "off sale" liquor license granted by the governing body of a municipality; and (2) did the liquor control commissioner abuse his discretion in this case if he had the right to exercise such discretion.

In arriving at a determination of the first question referred to it is necessary to determine what powers the legislature intended

to bestow upon the liquor control commissioner when it enacted Ex. Sess. L. 1933-1934, c. 46, 3 Mason Minn. St. 1936 Supp. §§ 3200-11 to 3200-58. That act was adopted following the repeal of the prohibition amendment. It was apparent that the legislature would need guidance in the enactment of legislation pertaining to the control of the manufacture and sale of intoxicating liquor. To that end the governor appointed a liquor control committee composed of a large number of representative citizens of the state. This committee in due time filed its report with the governor, and, based in part at least upon that report, Governor Olson, in his message to the special session of the Minnesota legislature on December 6, 1933, made the following recommendations:

"In your consideration of liquor control through a private system, I earnestly recommend the study of the report submitted by the Minnesota Liquor Control Committee appointed by me. The Committee has given sincere, thoughtful consideration to the question and has furnished us with valuable information and recommendations.

"If you decide to turn the sale of liquor over to private interests, legal enforcement powers should be centralized in the state. A Liquor Control Commissioner, appointed by the Governor, should be given authority to pass upon all licenses for the sale of intoxicating liquor in the state of Minnesota in package form for consumption off the premises whereon the liquor is sold. All applications for such permits should first have the approval of the governing body of the political subdivision in which it is proposed to operate such liquor store. The right to reject an application should, however, be reserved to the State Commissioner, despite the recommendation of the local governing body. Any municipality should be given the right and power to own and operate, under a license from the State Commissioner, liquor stores within such municipality.

"Manufacturers, wholesalers, distributors, blenders, and rectifiers should be licensed exclusively by the State Commissioner.

"Licenses for the sale of liquor for consumption on the premises where sold, should, subject to restrictions and qualifications imposed by you, be under the exclusive control of the governing body of the political subdivision which decides to permit such sale. Entire responsibility can then be placed upon the community which decides to permit the sale of liquor for consumption upon the premises where it is sold."

We believe it may be assumed that the legislature had in mind the governor's recommendations when it enacted Ex. Sess. L. 1933-1934, c. 46, and intended to confer upon the liquor control commissioner more than the ministerial duty of signing licenses granted by the governing bodies of municipalities. If that was all the power the legislature intended to bestow upon the liquor control commissioner there was no occasion for embodying in the act the following provisions pertaining to the commissioner's duties in the administration of the act:

"Sec. 5. All licenses for retail 'Off sale' shall be granted by the local governing body subject to the approval of the Liquor Control Commissioner and shall not become effective until so approved. * * *

" 'Off sale' licenses issued by any municipality shall not be effective until approved, together with the bond, by the Liquor Control Commissioner, but no fee shall be payable to such Commissioner for such approval.

"Sec. 6. Every person desiring a license from a local governing body shall file with the clerk of the municipality a verified written application in the form to be prescribed by the Commissioner, with such additional information as the local governing body shall require. An applicant for an 'Off sale' license shall file with the clerk of the proper municipality a bond with corporate surety, or, in lieu thereof, cash or United States Government bonds in a sum, not less than $1,000 and not more than $3,000, as the local governing body of such municipality shall determine, which bond shall be approved by such local governing body and the Liquor Control Commissioner.

"Sec. 7. Any license issued under the provisions of this Act may be revoked by the authority issuing such license for violation of any provisions of this Act. 'Off sale' licenses may be revoked by the governing body of the municipality after hearing or revoked by the Liquor Control Commissioner after hearing."

The foregoing, as well as other provisions contained in the act, show clearly that it was the intention of the legislature to give to the liquor control commissioner discretion in the approval of licenses granted by the governing bodies of municipalities. We therefore answer the first question in the affirmative. Such conclusion is in harmony with the established law of this state as well as that of other jurisdictions. State ex rel. Zeglin v. Board of Co. Commrs. of Carver County, 60 Minn. 510, 62 N. W. 1135.

■ Did the liquor control commissioner abuse his discretion in refusing to approve the granting of the license involved herein? We are of the opinion he did not. Complaint was made by several civic bodies against the granting of the license to relator. Appellant's investigation disclosed that respondent's lease was guaranteed by persons interested in the sale of certain brands of liquor. This was violative of the liquor control act. A review of the entire record satisfies us that there was no abuse of discretion on the part of the commissioner in refusing to approve the license in question.

Judgment reversed.

Mr. Justice Peterson, having been attorney general when the appeal in this case was taken, took no part in its consideration or decision.